372 So.2d 694 (1979)
Joseph D. VINSON and Louis B. Graham, Plaintiffs-Appellees,
v.
David P. LEVY, Mark P. Banjavich, Vincent P. Robin, III, John B. Wilkinson, and Balehi Marine, Inc., Defendants-Appellants.
No. 12625.
Court of Appeal of Louisiana, First Circuit.
May 29, 1979.
Rehearing Denied July 16, 1979.
*695 Ralph R. Miller, Wayne W. Foley, Norco, J. B. Kiefer, New Orleans, for plaintiffs-appellees.
Maurice J. Le Gardeur, Jr., Covington, John B. Wilkinson, New Orleans, for defendants-appellants.
Before LANDRY, COVINGTON and PONDER, JJ.
COVINGTON, Judge.
This matter arose on a petition for injunctive relief filed by the plaintiffs, Joseph D. Vinson and Louis B. Graham, to enjoin the defendants, David P. Levy, Mark P. Banjavich, Vincent P. Robin, III, John B. Wilkinson and Balehi Marine, Inc., from violating recorded restrictive covenants by using for commercial purposes Lots 27 and 29 in Oaklawn Subdivision, Section 39, Township 8 South, Range 13 East, St. Tammany Parish, Louisiana, as well as a 40-foot strip of land adjacent to Lot 27 (lying between Lots 27 and 47) in said section, with the plaintiffs obtaining an ex parte temporary restraining order and having a rule for a preliminary injunction set for hearing.
The scheduled rule was postponed with the parties agreeing to continue in effect the temporary restraining order until a hearing on the merits could be held. Thereafter, the defendants filed an exception of no right of action on the ground that the strip was a dedicated street which was not subject to the restrictive covenants. The plaintiffs then filed a rule for contempt of court for the defendants' violation of the temporary restraining order by storing oil drums and machinery on the subject property in connection with the commercial activities of defendant Balehi Marine, Inc. The defendants responded by filing a motion to dissolve the temporary restraining order.
From a judgment granting to the plaintiffs a permanent injunction preventing the defendants from conducting any nonresidential activity on the lots and a portion of the 40-foot strip, ordering removal of commercial equipment from the said property, and finding the defendants in contempt of court for violating the temporary restraining order, the defendants have devolutively appealed. The plaintiffs have answered the appeal, seeking more extensive injunctive relief.
The trial court properly overruled the exception of no right of action. Plaintiffs have an interest in determining whether injunctive relief should be granted to prohibit the defendants from conducting any business or commercial activities on the subject property. See Bamber Contractors, Inc. v. Henderson Brothers, Inc., 345 So.2d 1212 (La.App. 1 Cir. 1977). The trial court also properly overruled the exception of res judicata. The first suit involving these parties was a declaratory judgment action in which the defendants in the instant suit sought to have the restrictive covenants in the deed from Louis B. Graham to Rose Marie Frazier Morrison and Henry Toomer Morrison declared to be inapplicable to Lots *696 27 and 47 and the 40-foot strip of land. No question as to the application of the restriction of the strip was presented in the first suit. The case was decided on motions for summary judgment filed by both parties based on the pertinent language of the restrictive covenants in the Graham-Morrison sale. The instant suit is not founded on the same cause of action as the first suit, and there is no identity of the thing demanded in the two suits. See Welch v. Crown Zellerbach Corporation, 359 So.2d 154 (La. 1978).
Taking the facts of this case into consideration, we find that we are unable to agree with the conclusion of the court below that there was a dedication of the particular strip of land in question. Accordingly, we affirm in part and reverse in part.
The record reflects that Balehi Marine, Inc. is the owner of a certain tract of land, Lots 46 and 47, fronting on Bayou Lacombe in St. Tammany Parish, on which it conducts shipyard operations. Immediately adjacent to the shipyard property is the property in question, Lots 27 and 29 and the 40-foot strip of land, which is owned by David P. Levy, Mark P. Banjavich, Vincent P. Robin, III, and John B. Wilkinson, each of them having acquired an undivided one-fourth interest from Mr. and Mrs. Henry T. Morrison on November 24, 1975, whose deed of acquisition had first contained the restrictive covenants at issue. Joseph D. Vinson owns Lot 31, which is immediately adjacent to the property in question, and Louis B. Graham is the owner of Lot 35, which is adjacent to the Vinson property.
These restrictive covenants were created by one of the plaintiffs, Louis B. Graham, in his deed to Mrs. Rose Marie Frazier, wife of, and Henry Toomer Morrison (Mr. and Mrs. Henry T. Morrison) on October 8, 1968, conveying Lots 27 and 29 of Oaklawn Subdivision in St. Tammany Parish, together with a 40-foot strip adjacent to Lot 27. The restrictive covenants limited the use of the property to "residential purposes only" and required the unanimous consent of the owners of the conveyed property as well as the owners of adjacent lots (Lots 31, 33 and 35) for alteration of the restrictions. The validity and meaning of these restrictive covenants have already been ruled upon by this Court in Levy v. Graham, 347 So.2d 1180 (La.App. 1 Cir. 1977), where we held that the restrictive covenants in the deed transferring the property created a real obligation which was binding on the successors in title of Mr. and Mrs. Henry T. Morrison, so that the property could only be used for residential purposes unless use for other purposes was permitted by unanimous consent of the adjacent landowners. See LSA-C.C. art. 2015; Gremillion v. Rapides Parish School Board, 242 La. 967, 140 So.2d 377 (1962); McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960).
On appeal, the defendants-appellants do not question the injunctive relief granted as to Lots 27 and 29, conceding that the use of those lots is limited to residential purposes. Appellants, however, do strongly contend that the restrictive covenants have no application to the 40-foot strip of land, because at the time of the imposition of the restrictive covenants the vendor, Louis B. Graham, was not the owner of the strip, it having been statutorily dedicated[1] as a public street (Clesi Avenue) by an act of dedication executed by Henry J. Robbert and John C. Dodt on May 24, 1911.
The applicable statute relative to dedication in the instant case is Act 134 of 1896 (now, after several amendments, LSA-R.S. 33:5051), which provides:
"Whenever the owner of any real estate desires to lay off the same into squares or lots with streets or alleys between the squares or lots and with the intention of selling or offering for sale any of the squares or lots, he shall, before selling any square or lot or any portion of same, *697 cause the real estate to be surveyed and platted or subdivided by a licensed surveyor or civil engineer into lots or blocks, or both, each designated by number, and set stakes, which shall be permanent in nature, at all of the corners of every lot and block thereof, properly marked so as to designate the correct number of each lot and block; write the legal description of the land on the plat or map, and cause to be made and filed in the office of the keeper of notarial records of the parish wherein the property is situated and copied into the conveyance record book of such parish, and a duplicate thereof filed with the assessor of the parish a correct map of the real estate so divided, which map shall contain the following:
(1) The section, township, and range in which such real estate or subdivision thereof lies according to government survey.
(2) The number of squares by numerals from 1 up, and the dimensions of each square in feet and inches.
(3) The number of each lot or subdivision of a square and its dimensions in feet and inches.
(4) The name of each street and alley and its length and width in feet and inches.
(5) The name or number of each square or plat dedicated to public use.
(6) A certificate of the parish surveyor or any other licensed surveyor or civil engineer of this state approving said map and stating that the same is in accordance with the provisions of this Section and with the laws and ordinances of the parish in which the property is situated.
(7) A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use."
While our jurisprudence is to the effect that substantial compliance with the statute is all that is required to create a statutory dedication,[2] there has been more material and substantial non-compliance than compliance in the instant case.
We find the case of Pioneer Production Corporation v. Segraves, 340 So.2d 270 (La. 1976), apposite. Justice Calogero, speaking for the Supreme Court, said:
"A statutory dedication is properly to be gleaned from the instrument, or instruments, of record, rather than from evidence or purported intention dehors the record. On the other hand what is of record must be given a rational construction in ascertaining the purport of the instrument. When that rational construction negates an intent on the part of the subdividing landowner to dedicate a particular piece of land, the fact that a reference to the land appears on a map does not, of itself, effect a dedication to public use. In Winningham v. Hill, 164 So.2d 384 (La.App. 2d Cir. 1964), the filing of plats indicating a twenty-foot by three-hundred seventy-eight foot strip of land without any symbols or marks from which a public purpose could be inferred was found insufficient to show dedication of the strip for public use. In Jefferson Parish School Board v. Assets Realization Co., 182 So.2d 818 (La.App. 4th Cir. 1966), plats indicating that a particular area was reserved for schools resulted in a finding that those areas were not dedicated to public use because the landowner did not intend thereby to dedicate them. And in the case of State Department of Highways v. Claitor, 289 So.2d 527 (La. App. 1st Cir. 1973) it was found that the fact alone that words of dedication are on a subdivision plat does not compel the result that the land in question has been dedicated.
"In the case before us, the Third Circuit held that `a privately owned fee interest subject to a public thoroughfare which existed before the creation and platting of a subdivision or even before the sporadic *698 sales ... is not subject to the fee-vesting effect of the statutory dedication unless the street is clearly shown as part of the subdivision by words or surveying symbols.' 326 So.2d at 518. We agree with this conclusion.
"The absence of circles or other surveyor marks delineating the eighty-foot strip, the position of the highway right of way on the border of the subdivision instead of traversing it, the subdivider's non-compliance with the statute with respect to indicating length and width of the right of way in feet and inches, the absence of any indication of exactly where the eighty-foot servitude lies in relation to the adjacent lots and the railroad right of way, and the fact that the property was the subject of a pre-existing conventional servitude granting use to the public are all indications that Segraves' plat of subdivision did not effect, and cannot reasonably be construed to have been intended to effect, a dedication of this property in question for public use."
The record reveals that the following exhibits were offered in evidence by the parties:
1. Plan of East and West Oaklawn, Exhibit D-1, prepared by Preston Herndon, C. E., April, 1911, recorded in Map File 218-B, of the official records of St. Tammany Parish, Louisiana. There is no indication that the Plan was also filed in the conveyance records or in the assessor's office. The dimensions of measurements of some lots, the lot numbers and the section, township and range of the property are given. The streets are not named, designated or measured. With respect to D-1, plaintiffs-appellees call our attention to the facts that Lots 36 and 47 are not designated thereon, the particular area in question is designated as Lots 1-5 (with no dimensions or measurements given), "Clesi Avenue" is not designated or indicated thereon, all or most of the lots are marked with a check or X, and that meaningless script writing from the reverse side has bled through the paper. If this writing was meant to be a dedication, it was not offered in evidence or made meaningful, so it can not be considered by us.
2. Plan of West Oaklawn, Exhibit D-8, prepared by Preston Herndon, C. E., April, 1911, recorded in Map File 187-A, of the official records of St. Tammany Parish, Louisiana. There is no indication said Plan was filed in the conveyance records or the assessor's office. This Plan shows a strip of land 40 feet in width designated as "Clesi Avenue," but does not show Lots 27 and 29, and was not referred to in the description or title to the subject property. Many of the lots are marked with checks or X's. There is no cross-reference from D-1 to D-8, and no dedication is indicated on D-8. D-8 appears to be a map of resubdivision of Lots 1-5 as shown on D-1, but does not show when it was recorded and makes no reference to the land owner or owners. The Plan also has written notations of "NOGN" on Lots 46 and 47. New Orleans-Great Northern did not acquire ownership of these lots until July 15, 1917.
3. Act of Dedication of East Oaklawn, Exhibit D-5, shows the dedication of certain designated streets, including "Clesi Avenue." This Act is irrelevant to the instant case since it concerns "East Oaklawn," which is not the subdivision in which the property at issue is located, and reference is made to a plan of A. G. Mundinger, C.E., dated July, 1912, which deals with 385 town-lots in Section 33, Township 8 South, Range 13 East. There is nothing to indicate that the Mundinger plan was ever filed in St. Tammany Parish, Louisiana, or was offered in evidence.
4. Act of Sale and Exchange by and between Dodt Realty Company, Inc. and New Orleans Great Northern Railroad Company (NOGN), dated June 22, 1917, recorded July 15, 1917, wherein NOGN acquired Lots 46 and 47, according to map of West Oaklawn filed May 24, 1911, together with Lots 27, 29, 31, 33 and 35, according to plat of East and West Sections of Oaklawn, filed May 24, 1911, and all right, title and interest in a 40-foot strip of land lying between Lots 47 and 27, Exhibit D-4.
5. Act of Deposit of Map of Proposed Land Exchange between NOGN and Dodt *699 & Robbert, dated December 28, 1939, Exhibit LBG-1, referring to Item 4 above. Said Map is filed as Exhibit LBG-3, which shows a 40-foot strip as an unmarked roadway adjacent to Lot 47. These items were filed in Orleans Parish.
6. Act of Credit Sale by New Orleans Great Northern Railway to Walter J. Graham, dated December 28, 1939, recorded January 10, 1940, Exhibit LBG-2, conveying Lots 46, 47, 27, 29, 31, 33, and 35, together with all right, title and interest of NOGN in 40-foot strip of land between Lots 47 and 27.
7. Judgment of Possession in Succession of George S. Graham, dated and recorded September 1, 1961, in which Louis B. Graham and Hazel Graham Goodwill are recognized as the sole heirs of George S. Graham and sent into possession of an undivided one-half interest each of property of the decedent, including the aforesaid 40-foot strip of land, Exhibit D-3.
8. Act of Partition between Louis B. Graham and Hazel Graham Goodwill, dated August 30, 1961, recorded September 15, 1961, Exhibit D-7, in which Louis B. Graham receives the said 40-foot strip of land, along with other property.
9. Act of Credit Sale from Louis B. Graham to Rose Marie Frazier Morrison and Henry Toomer Morrison, dated October 8, 1968, recorded October 9, 1968, Exhibit D-2, in which the 40-foot strip is conveyed without warranty and the aforesaid restrictive covenants are imposed.
10. Survey Map, Exhibit D-6, dated February 13, 1975, prepared by J. R. Fitzmorris, Registered Land Surveyor, for David Levey (Levy), of West Oaklawn, Part of Section 39, Township 8 South, Range 13 East, St. Tammany Parish, La., on which certain Lots numbered 46 through 71 are designated. Clesi Avenue and Robert (Robbert) Road, Bayou Lacombe and G.M. & O.R.R. are also designated on the map.
None of the exhibits in the record indicates a formal statutory dedication by any land owner to the parish of the 40-foot strip, nor is there anything else in the record to show a dedication of the strip to the public by the owner. The failure to establish proof of a formal dedication by the land owner and the recording of the plat thereof, one of the necessary requirements of the dedication statute, is sufficient for us to rule that the defendants-appellants have failed to show that there has been a statutory dedication of the strip of land in question.
Considering all of the evidence before this Court, we hold that there has been neither strict nor substantial compliance with the statute, and that there has been no statutory dedication of the 40-foot strip of land. See Eshleman v. Duracher, 325 So.2d 688 (La.App. 1 Cir. 1976).
For the foregoing reasons, the judgment appealed is reversed insofar as it limits the applicability of the restrictive covenants and the injunctive relief granted to only the South half of the 40-foot strip of land between Lots 47 and 27, by decreeing that said strip had been validly statutorily dedicated; the judgment is affirmed in all other respects. Accordingly, the judgment is amended and recast to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the acts complained of herein by plaintiffs are injurious to the plaintiffs, are an impairment of their property rights, and are in violation of those restrictive covenants affecting the property hereinafter described, and, accordingly, the defendants, DAVID P. LEVY, MARK P. BANJAVICH, VINCENT P. ROBIN, III, JOHN B. WILKINSON AND BALEHI MARINE, INC. are hereby permanently enjoined, restrained and prohibited from conducting any activity of any nature whatsoever, other than residential activity, on the property hereinafter described, and/or from conducting and/or constructing any business, business enterprise, noxious or offensive establishment and/or activity on the property hereinafter described, to wit:
TWO (2) CERTAIN LOTS OF GROUND, situated in St. Tammany Parish, State of Louisiana, in Section 39, Township 8 South, Range 13 East, which lots of *700 ground are designated as the Numbers twenty-seven (27) and twenty-nine (29) on a plat of east and west sections of Oaklawn, N. J. Clesi, Agent, filed by Henry J. Robbert and John C. Dodt, in the office of the Clerk of the District Court for St. Tammany Parish, Louisiana, dated May 24, 1911, and as per blueprint annexed to act of Felix H. Lapeyre, Notary Public, Orleans Parish, Louisiana, dated December 28, 1939. According to said blueprint aforesaid, each of the said lots measures 208.7 feet on Robbert Road and extends to Bayou Lacombe, having a total frontage for both lots on said Bayou of 417.4 feet, with a depth on the line dividing Lot 29 from Lot 31 of approximately 1400 feet.
Also, all that portion or strip of land 40 feet in width lying between Lots Nos. 47 and 27 as shown on the aforesaid map or plat, and lying adjacent to the said Lot No. 27.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the storing of oil drums and pieces of machinery on the property hereinabove described, including the aforesaid 40-foot strip of land, was in violation of previous orders of court and those restrictive covenants affecting the property hereinabove described, and accordingly, the defendants, DAVID P. LEVY, MARK P. BANJAVICH, VINCENT P. ROBIN, III, JOHN B. WILKINSON AND BALEHI MARINE, INC. are hereby found to be in contempt of court and are hereby ordered to remove the oil drums and machinery located on the property hereinabove described within 30 days of the finality of this judgment.
We further cast the appellants for all costs.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] No claim of an implied or common law dedication, which would constitute a servitude only, is made since admittedly there was no use or other acceptance of the strip of land by the public. See Eshleman v. Duracher, 325 So.2d 688 (La.App. 1 Cir. 1976); Comment, Dedication of Land to Public Use, 16 La.L.Rev. 789 (1956); Comment, the Third Dimension of Dedication in Louisiana, 30 La.L.Rev. 583 (1970).
[2] Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965); Metairie Park v. Currie, 168 La. 588, 122 So. 859 (1929); Banta v. Federal Land Bank of New Orleans, 200 So.2d 107 (La.App. 1 Cir. 1967), writ denied, 251 La. 46, 202 So.2d 657 (1967); Collins v. Zander, 61 So.2d 897 (La.App.Orl.1952).