Susana Beatriz BRUN–JACOBO, Ana Esther Brun-Jacobo, and Alberto E. Brun-Jacobo, Plaintiffs-Appellees,

v.

PAN AMERICAN WORLD AIRWAYS, INC., and United States of America, Defendants-Appellants.

No. 87–3127.

United States Court of Appeals, Fifth Circuit.

June 17, 1988.

Frederick R. Bott, Marc J. Yellin, Deutsch, Kerrigan & Stiles, John P. Volz, U.S. Atty., New Orleans, La., for defendants-appellants.

Stephen B. Murray, Patricia R. Murray, Murray Law Firm, New Orleans, La., for plaintiffs-appellees.

Before WISDOM, GARWOOD, and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

In this wrongful death Louisiana diversity case, defendant-appellant Pan American World Airways, Inc. (Pan Am), following retrial, appeals the district court's grant of the motion for new trial of plaintiffs-appellees Susana Beatriz Brun-Jacobo, Ana Esther Brun-Jacobo, and Alberto Eduardo Brun-Jacobo (collectively, the Brun-Jacobos). We hold that the district court erred in granting the motion for new trial, and we remand the case with instructions to reinstate the original jury verdict and judgment thereon.

## Facts and Proceedings Below

On July 9, 1982, Pan Am Flight 759 crashed four to six seconds after its left wing clipped a tree just following takeoff from New Orleans International Airport, killing all on board. Among the passengers traveling on that flight were the Brun-Jacobos' parents, Alberto Brun-Bonino and Selva Grecia Jacobo-Denis de Brun. They apparently died instantly on impact. The Brun-Jacobos' parents, like the Brun-Jacobos themselves, were Uruguayan residents and citizens. On August 12, 1982, the Brun-Jacobos, all of whom were adults at the time of the crash, filed suit against Pan Am and other defendants seeking damages for the parents' conscious mental anguish and for appellees' loss of the love, affection, and companionship of their parents. Pecuniary or economic damages (such as loss of contributions or inheritance) were not claimed at trial. There was no evidence of post-impact survival, and this was not submitted to the jury. Liability was not contested.

At the first trial, which began on May 27, 1986 and was on damages only, the jury returned a verdict awarding $65,000 to each of the Brun-Jacobos for the loss of the love, affection, and companionship of their parents.[1] The jury also awarded $20,000 for the pre-impact mental anguish of each decedent. These were the only items submitted. The district court entered judgment accordingly. Shortly thereafter, the Brun-Jacobos filed a motion for new trial. On September 4, 1986, the district court granted this motion, stating that the awards for loss of parental love, affection, and companionship were the result of bias or prejudice against appellees as foreigners or Uruguayans. In making this determination, the district court did not refer to any independent or specific evidence or manifestation, direct or circumstantial, of bias or prejudice. The court simply compared the awards in the present case with those in other cases arising from the same plane

1. The jury awarded the Brun-Jacobos $25,000 each for the loss of their father and $40,000 each for the loss of their mother.

crash and concluded that because the amounts were substantially lower in the present case, the jury must have been influenced by such bias or prejudice. At the second trial, held on January 12, 1987 and likewise on damages only, the amounts awarded were greater. For the pre-impact mental anguish of each decedent, the jury awarded $25,000; for the loss of the parents' love, affection, and companionship, it awarded the Brun-Jacobos $110,000 each.[2] As before, these were the only items submitted. The district court entered judgment on the second verdict, and this appeal followed.

## Discussion

■ As a general rule, the decision to grant or deny a motion for new trial is committed to the sound discretion of the district court and is reversible only for an abuse of that discretion. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir.1982); *see Koonce v. Quaker Safety Products & Manufacturing Co.*, 798 F.2d 700, 718 (5th Cir.1986); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir.1985). When the district court denies a motion for new trial, appellate review is especially deferential because in that instance deference to the district court operates in harmony with deference to the jury's determination of the weight of the evidence and the constitutional allocation to the jury of questions of fact. *Shows*, 671 F.2d at 930 (citing *Taylor v. Washington Terminal Co.*, 409 F.2d 145, 148 (D.C.Cir.), *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969); *Massey v. Gulf Oil Corp.*, 508 F.2d 92, 94–95 (5th Cir.), *cert. denied*, 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975)). However, when the district court grants a motion for new trial, appellate review is broader because in that situation the deference due the district court is in conflict with the deference due the jury. *Shows*, 671 F.2d at 930 (citing *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362 (5th Cir.1980) (per

curiam)). In the present case, the district court determined that the amounts awarded by the first jury as damages for loss of parental love, affection, and companionship were the product of bias or prejudice against the appellees because they were Uruguayan and therefore decided to grant the Brun-Jacobos' motion for new trial. Because this order necessarily entailed the setting aside of the first jury's verdict, under the above standards it "must undergo careful appellate scrutiny." *Narcisse v. Illinois Central Gulf Railroad Co.*, 620 F.2d 544, 546 (5th Cir.1980) (citing *Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir.1976); *Cities Service Oil Co. v. Launey*, 403 F.2d 537, 539–40 (5th Cir. 1968)).

In its written order, the district court stated that it was granting the motion for new trial because the jury must have been biased or prejudiced against the Brun-Jacobos. In reaching this conclusion, however, the district court did not identify any particular act, occurrence, or circumstance as indicative of bias or prejudice. It simply compared the amounts awarded to the Brun-Jacobos by the first jury for loss of parental love, affection, and companionship with the amounts awarded to other plaintiffs for such loss in other cases arising from the same plane crash, and concluded that because the amounts awarded in the present case were significantly lower than those awarded in the other referenced cases arising from this disaster, the jury must have been biased against appellees because they were Uruguayan.

Like the district court, appellees, apart from the size of the verdict, point to no circumstance or occurrence in connection with the first trial suggesting possible bias or prejudice. No statement by any actual or prospective juror, or by the court or any witness, or by any counsel, in argument, opening statements, when addressing the court, questioning witnesses, or otherwise, is identified which might be viewed as potentially prejudicial in this respect. Nothing in the composition of the jury or venire,

2. The second jury awarded the Brun-Jacobos $50,000 each for the loss of their father and $60,000 each for the loss of their mother.

or the exercise of peremptory strikes or challenges for cause, is mentioned. No potential source of any extraneous influence is specified. Nor does our review of the record reflect any such. This trial was relatively simple and lasted but part of two days. The transcript, from initial instructions and opening statements through final argument, charge, and verdict, runs only some 150 pages. Appellees' counsel made no complaints of the jury and did not object to any of the evidence or the rulings or instructions of the court in the first trial. Moreover, the court there properly instructed the jury that:

"In this case, since there are citizens of Uruguay who are litigating here in the United States Court, I tell you the obvious, that is, that they're entitled to the same fair trial as if they were United States citizens. A corporation: The United States Government, Pan American everybody, no matter whether it's a large or small corporation, everybody is entitled to the same fair trial at your hands. Everyone stands equal before the law, and all are to be dealt with equally in a court of justice."

No claim of bias or prejudice against appellees was made in their motion for new trial, nor did it point to any asserted trial error. Appellees merely contended that the award was inadequate and contrary to the great weight of the evidence.

While it is perhaps conceivable that an award might be so unreasonably low—or high—as to itself constitute a sufficient indication of invidious bias or prejudice against a party who might be particularly vulnerable to such improper considerations, a matter which we need not decide, this is clearly not such a case.

We note to begin with that the first trial finding that each parent suffered $20,000 pre-impact mental anguish is somewhat above other similar awards in respect to this particular disaster. *See Haley v. Pan American World Airways,* 746 F.2d 311, 317 (5th Cir.1984) ($15,000, sustained against challenge as excessive); *Pregeant v. Pan American World Airways,* 762 F.2d 1245, 1248 & n. 2, 1249 (5th Cir.1985) ($16,000); *In re Air Crash Disaster Near New Orleans, La.,* 789 F.2d 1092, 1098–99 (5th Cir.1986) (*Pampin*), *panel holding on this issue aff'd en banc,* 821 F.2d 1147, 1169–71 (5th Cir.1987) ($25,000, remitted to $7,500; evidence weaker than in *Pregeant*).[3] While, as *Pampin* illustrates, not all death cases from the same aircraft crash have the same proof on this issue, nevertheless they are usually quite similar *as to pre-impact mental anguish,* for the proof is generally (and was here) entirely circumstantial and only a very brief time (measured in a few seconds here) is involved.[4] While the proof in this case is closer to *Pregeant* than *Pampin*, it is nevertheless clear that the first jury's award as to this item was on the high, rather than the low, side. This is confirmed by the fact that appellees' motion for new trial did not complain of the verdict as to these items of damages, and the district court's initial new trial order did not include it. Appellant then filed a motion for reconsideration, urging that there was no basis for a new trial and, alternatively, if one were ordered it should be on all damages items rather than just some. Appellees responded by opposing appellant's alternative plea that any new trial be on all damages issues. The district court then granted appellant's alternative plea in its motion for reconsideration and ordered that the new trial be on all the damages issues. In sum, it is evident that the first jury was generous, or at least wholly fair, with respect to damages for the parents' pre-impact mental anguish. That strongly tends to contradict the hypothesis that the

3. *See also In re Air Crash Disaster Near New Orleans, La.,* 767 F.2d 1151, 1153, 1157, 1169 (5th Cir.1985) (*Giancontieri*) (no separate award for only pre-impact mental anguish; $100,000 for deceased mother's, and nothing for deceased children's, conscious pain and suffering prior to death; award respecting mother remitted to $15,000 by trial court, but entirely set aside on appeal because of absence of evidence that she was alive or conscious after impact).

4. As discussed below, it is entirely otherwise with respect to the damages suffered by the beneficiaries of the decedents.

jury was animated by bias or prejudice against Uruguayans. We conclude that the district court erred in concluding or assuming that the jury's verdict was influenced by such invidious considerations.

In assessing whether a district court properly orders a new trial on the ground that the damages awarded by the jury were inadequate, the question we must ask ourselves is "whether the [original] verdict was *clearly within* the universe of possible awards which are supported by the evidence.'" *Narcisse*, 620 F.2d at 547 (quoting *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 670 (5th Cir.1974) (emphasis in original)). If the original verdict is not clearly within that universe, then the district court does not abuse its discretion in ordering a new trial. However, if the verdict is within that universe, then the district court may not properly grant a new trial solely because it deems the verdict inadequate.

On the facts of this case, we believe that the district court abused its discretion.

At the time of their parents' deaths, the children were twenty-three, twenty-six, and twenty-eight years old; their father was sixty-five and their mother was fifty-four. The children were not present when the crash occurred. At the time of the first trial, they were twenty-eight, thirty, and thirty-two years old, and the jury hence had an opportunity to evaluate their damages based on a considerable passage of time. Neither the first nor the second jury made any distinction between the children in the awards rendered, indicating that special factors pertaining particularly to one individual child or another were not necessarily significant; nor was any such distinction argued for. The district court conceded that the jury could reasonably find that "the family relationship was typical." The evidence would support the conclusion that the children were able to successfully continue their lives and careers. The eldest, who had been married for several years, had her third child one year after the accident and has continued her medical school education; the middle child, since the crash, has completed her medical school studies and planned to take her examinations to become a medical doctor; the youngest child continued his work and ran the family business. The children continued to use the family beach house for vacations. There was no claim of economic loss.

█ As noted, the court compared the first jury's award for the damages suffered by the children with awards (for damages of a similar kind) *only* in other cases involving this identical crash.[5] The court apparently felt that to be a particularly apt sample. We disagree. The relevant similarity is that pertaining to the injury suffered by the children on account of the parents' deaths, not the cause of the deaths. *See, e.g., Haley,* 746 F.2d at 318 (examining awards in both automobile accident case and plane crash case); *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 785 n. 23 (5th Cir.1983) (comparing awards in cases involving many different causes of death). Absent unusual circumstances not present here, the particular cause or circumstances of the parents' deaths is *irrelevant* to the extent of the loss which the children suffer by reason of the deaths.[6] Had the district court looked at awards for similar *injuries,* it would have seen that the present awards, although lower than those received in several other plane crash cases, were nonetheless well within the permissible range of such awards in Louisiana.[7] Because the awards

---

**5.** Due to the nature of the evidence and the character of the damages sought for the parents' deaths, there was really little, if any, objective, quantifiable basis on which to assess the propriety of the award.

**6.** The district court also appeared to attach significance to the fact that in one of the cases to which it made comparison the jury was chosen from the same panel as the jury in the first trial here. We regard that as irrelevant, as they were totally different juries.

**7.** The district court cited no cases holding similar (or larger) awards for damages of this kind to be inadequate so as to mandate a new trial or similar relief; nor have appellees cited any such cases to us. Cases where larger awards were held *not excessive* do not, of course, establish that smaller awards are *inadequate* for this purpose. Any *range* of awards necessarily includes

contained in the original verdict were clearly within that range, and because there was otherwise no hint of any trial error, prejudice, or confusion, we hold that it was an abuse of discretion for the district court to set aside the original verdict and order a new trial.

## Conclusion

The district court erroneously assumed, without any adequate basis, that the original verdict for loss of love, affection, and companionship was the product of bias and prejudice against appellees because they and their parents were Uruguayan. The court likewise erred in comparing the first verdict on that element of damages only to those in suits arising out of the same crash. The original verdict on this item of damages, though lower than many, was nevertheless clearly within the universe of permissible awards for injuries of this type in Louisiana. There was no hint of trial error, prejudice, or confusion. Accordingly, we hold that the district court abused its discretion in setting aside the original verdict and granting the motion for new trial. We therefore vacate the judgment on the second verdict, reverse the grant of a new trial, and remand the case to the district court with instructions to enter judgment on the original verdict.[8]

REVERSED and REMANDED.

some both below and above the median or average.

There are a number of Louisiana wrongful death cases in which children who had close relationships with their parents received amounts lower than those awarded by the original jury in the present case. *See, e.g., Thompson v. Tuggle,* 486 So.2d 144, 153 (La.Ct.App. 3d Cir.) ($20,000 was lowest permissible award to nineteen-year-old daughter for loss of fifty-seven-year-old father's love and affection; "close relationship" and lived at home), *writ denied,* 489 So.2d 919 (La.1986); *Rivet v. State,* 434 So.2d 436, 438–39 (La.Ct.App. 3d Cir.1983) (award of $35,000 to each of decedent mother's adult children did not exceed trial court's "much discretion" as "their relationship with their mother was especially close"); *Cupit v. Grant,* 425 So.2d 847, 853 (La.Ct.App. 3d Cir.1982) ($30,000 was lowest amount that could be awarded to each of decedent mother's minor children, aged eleven and nine). *See also Johnson v. State,* 450 So.2d 386, 393–94 (La.Ct.App. 1st Cir.1984) (affirming award of $25,000 to each of adult and minor children for loss of their mother); *Price v. Louisiana Farm Bureau Mutual Insurance Co.,* 457 So.2d 722, 728–29 (La.Ct.App. 2d Cir.1984) (five-judge panel) (award of $8,000 each to five minor children for death of thirty-four-year-old father increased on appeal to "$25,000 each as the lowest reasonable amount for loss of love and affection"; evidence of "a close, loving relationship ... decedent was a good father"); *Bickham v. Airlie Corp.,* 468 So.2d 658, 661 (La.Ct.App. 4th Cir.1985) ("$70,000 was divided equally among the seven children," one of whom was a minor, "for the loss of love and affection suffered" by reason of their father's death; "[a]lthough the awards to the children, particularly the minor child, appear low, we find that they are within the range of discretion afforded the trier of fact"); *Daigle v. Hanson,* 476 So.2d 953, 961 (La.Ct.App. 1st Cir.1985) ($15,000 to each of four adult children for death of their forty-five-year-old mother; "though ... the awards for loss of love and affection are on the low side" trial court did not abuse its discretion); *Freeman v. Varnado,* 480 So.2d 980, 988 (La.Ct.App. 4th Cir.1985) (appellate court awards $25,000 to each of two adult sons for "loss of love and affection" of deceased fifty-one-year-old father; children "enjoyed a close bond with their father ... both enjoyed a variety of activities with him, sought his counsel, and confided in him"); *Reed v. John Deere,* 569 F.Supp. 371, 378–79 (M.D.La.1983) (bench trial award to adult children of $25,000 each for loss of love, affection, companionship, and guidance on death of their sixty-four-year-old father).

In this Louisiana diversity case, it is appropriate for us to look to similar Louisiana awards. *See, e.g., Dixon v. International Harvester Co.,* 754 F.2d 573, 589 (5th Cir.1985) ("awards affirmed by the Mississippi Supreme Court for similar injuries are instructive in this diversity case"); *Haley,* 746 F.2d at 318 & n. 16 (citing Louisiana cases on issue of excessiveness and noting that the amount of damages awarded "appears disproportionate to past Louisiana awards for similar injuries"); *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 785 n. 23 (5th Cir.1983) (citing Louisiana cases on issue of excessiveness of award).

8. Appellants also complain of the district court's rulings respecting their motion to dismiss based on *forum non conveniens.* We reject these contentions based on our holding in *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir.1987).